UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

SHAWN PAUL GROSSMAN,

        Plaintiff,

v.

UNKNOWN FEDEREA et al.,

        Defendants.
_____/

Case No. 1:24-cv-623

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) In an Order (ECF No. 4) entered on June 24, 2024, the Court directed Plaintiff to file an amended complaint. The Court received Plaintiff's amended complaint (ECF No. 7) on July 16, 2024. Accordingly, this case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against

Defendants Ritter and Normington for failure to state a claim. The Court will also dismiss Plaintiff's state-law claims against Defendants Ritter and Normington without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss the following claims against Defendants Federea and Battle for failure to state a claim: (1) Plaintiff's claims for declaratory relief; (2) Plaintiff's First Amendment retaliation claims; and (3) any intended Fourteenth Amendment due process claims premised upon Plaintiff's loss of property. The following claims against Defendants Federea and Battle remain in the case: (1) Plaintiff's Eighth Amendment failure to protect claims for damages; and (2) Plaintiff's state-law negligence claims.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC personnel in their personal capacities: Prison Counselors Unknown Federea, Unknown Battle, and Unknown Ritter, as well as Resident Unit Manager Unknown Normington.

Plaintiff alleges that as of November 1, 2022, he had been experiencing issues with his cellmate at IBC. (Am. Compl., ECF No. 7, PageID.28.) Plaintiff states that he was being bullied and "slapped around." (*Id.*) Plaintiff "was physically forced to do things [he did not want to] do." (*Id.*) Plaintiff "was stolen from and forced to hand over things [he] owned," and he was "threaten[ed] with physical confrontation." (*Id.*) Plaintiff alleges that he told each Defendant "all of what was going on almost every day." (*Id.*) Plaintiff also wrote four grievances about the situation. (*Id.*)

Plaintiff alleges that his cellmate, inmate Schoening, "exposed himself to [Plaintiff] and forced himself on [Plaintiff]." (*Id.*, PageID.29.) Plaintiff began having issues with inmate Schoening as soon as he was moved into the cell. (*Id.*, PageID.30.) Inmate Schoening told Plaintiff that he was a Vice Lord gang member and tried to control Plaintiff, "saying what he put up with and what he wouldn't put up with." (*Id.*) According to Plaintiff, inmate Schoening "liked smoking K-2 and doing Suboxone, stuff [Plaintiff did not] do." (*Id.*) After a week, inmate Schoening told Plaintiff that he was "lame" and that he could not lock with Plaintiff because Plaintiff did not "do drugs with him and be a friend." (*Id.*)

On November 17, 2022, inmate Schoening was high on Suboxone and was pacing back and forth in the cell. (*Id.*) He exposed himself to Plaintiff and told Plaintiff to go down on him. (*Id.*) Plaintiff "told him no and started looking through [his] tablet to ignore" inmate Schoening. (*Id.*) Plaintiff "felt very uncomfortable being in the room with him." (*Id.*) Afterwards, inmate Schoening became physical with Plaintiff by smacking him around and punching him. (*Id.*) Plaintiff contends that he was "constantly being threatened by him, and physically assaulted." (*Id.*)

The next day, Plaintiff "told [Defendant] Federea [about] the situation minus the exposing." (*Id.*, PageID.31.) Plaintiff "didn't want anyone to know and [he] was embarrassed." (*Id.*) Plaintiff told Defendant Federea that he was "being bullied and physical[ly] abused." (*Id.*) Defendant Federea told Plaintiff to "knock the piss out of him." (*Id.*)

On November 23, 2022, Plaintiff spoke to non-party Lieutenant Fuller about the situation and asked for protective custody if he could not be moved elsewhere. (*Id.*, PageID.28.) Fuller told Plaintiff "he would look into it." (*Id.*) Plaintiff also spoke to non-party Sergeant Ramiraez that day. (*Id.*, PageID.29.) Plaintiff alleges further that on an unspecified day, during his laundry porter job, he spoke to Defendants Federea and Battle about the situation and "begged to be moved." (*Id.*)

3

On December 4, 2022, Plaintiff spoke to Defendants Federea and Battle, telling them that "something was going to happen to [him]." (*Id.*, PageID.31.) Plaintiff also wrote to the Assistant Deputy Warden. (*Id.*) Plaintiff alleges that he was on his best behavior because he had a good job as a laundry porter and was also close to completing Violence Prevention Programming (VPP). (*Id.*) Plaintiff contends that he "would even get drugs for [inmate] Schoening so he would be nice to [Plaintiff] and not beat on" him. (*Id.*) Plaintiff "did everything [he] could to try and get moved to avoid a confrontation." (*Id.*)

On December 5, 2022, Plaintiff was leaving his cell for dinner when inmate Schoening "held the cell door open and put a garbage can so it would not close." (*Id.*, PageID.32.) Inmate Schoening's "gang member friend was giving him spud juice he was buying." (*Id.*) Plaintiff also thought that inmate Schoening was stealing Plaintiff's TV for that friend. (*Id.*) When they came back from dinner, inmate Schoening started drinking. (*Id.*) Plaintiff alleges that he was "yelling and screaming across the hall to his gang member friends[,] being obnoxious." (*Id.*) Inmate Schoening was then called out for legal mail and was gone for over an hour. (*Id.*)

Plaintiff went to sleep while inmate Schoening was gone. (*Id.*) He woke up to inmate Schoening screaming and yelling. (*Id.*) Plaintiff turned on his TV and put on his headphones to try to ignore inmate Schoening. (*Id.*) Inmate Schoening slapped Plaintiff's hand "with force to try [and] knock [the] player out of Plaintiff's hand." (*Id.*, PageID.33.) Plaintiff told inmate Schoening to stop touching him and continued to play on his tablet. (*Id.*)

A few minutes later, inmate Schoening walked up to Plaintiff again and slapped him. (*Id.*) Inmate Schoening began to punch Plaintiff in the face as Plaintiff screamed for help. (*Id.*) The next thing Plaintiff knew, he was waking up "in a pool of [his] own blood on the concrete floor." (*Id.*)

4

Plaintiff got up and hit the emergency button. (*Id.*) Plaintiff tried to yell for help, but he was "struck again and grabbed and thrown to the floor." (*Id.*)

Inmate Schoening told Plaintiff to calm down and wipe himself off. (*Id.*) Plaintiff said he was going to press charges. (*Id.*) Inmate Schoening said "so [you are going to] snitch on me." (*Id.*) Inmate Schoening then said, "Well[,] you assaulted me to[o]," and he began to strike himself on the right side of his face. (*Id.*) Inmate Schoening then took the sheets off of Plaintiff's bed to clean up the blood. (*Id.*)

Plaintiff told inmate Schoening that he needed medical attention. (*Id.*, PageID.34.) Inmate Schoening was cleaning up the blood and going back and forth to the cell door, telling his friends, "He's [going to] snitch on me." (*Id.*) Inmate Schoening told Plaintiff that if he snitched, "his bros would butcher [Plaintiff] when they [caught him]." (*Id.*) Inmate Schoening told Plaintiff to lie and said that he fell off the bed and injured himself. (*Id.*) Plaintiff "did what [he] was exactly told. [He] was afraid for [his] safety and life." (*Id.*)

During rounds, Plaintiff turned the lights back on. (*Id.*) An officer saw Plaintiff standing at the sink and saw that he was a "bloody mess." (*Id.*) The officer called for help. (*Id.*) Non-party Sergeant Stubbs took Plaintiff to medical, and an ambulance was called. (*Id.*) Non-party Sergeant Grehn took pictures of Plaintiff's injuries. (*Id.*, PageID.35.) Plaintiff was taken to the hospital, where he was told that he probably had a concussion, as well as a broken nose/nasal fracture. (*Id.*) Plaintiff had severe sharp neck pains and was given a neck brace. (*Id.*) He could not see out of his left eye. (*Id.*)

When Plaintiff returned to IBC, a sergeant told him that there was a misconduct ticket for him. (*Id.*, PageID.36.) Plaintiff asked what, and the sergeant told him the ticket was for fighting. (*Id.*) Plaintiff said that was impossible, but he was taken to segregation. (*Id.*) Plaintiff initially

"wrote [his] hearings statement for [the] fighting ticket saying what [inmate] Schoening said to do." (*Id.*) However, Plaintiff then "decided to tell the truth and go with protective custody. [He] figured that they [would] ride [him] out of here and just transfer [him]." (*Id.*)

Plaintiff was ultimately found guilty of fighting. (*Id.*, PageID.37.) He contends that he was retaliated against because his property was either thrown away or given to porters. (*Id.*) Plaintiff avers that he had over $300.00 worth of property, including his dentures, go missing. (*Id.*) Plaintiff had taken off his watch, shoes, and personal shorts to go to the hospital; those items also came up missing. (*Id.*) Plaintiff's mail, grievances, and kite requests "were either ignored, lost[, or went] unprocessed." (*Id.*) Plaintiff filed grievances while in segregation; those were ignored. (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment failure to protect and First Amendment retaliation claims against Defendants. (*Id.*, PageID.41–42.) He also appears to assert state law negligence claims against Defendants. (*Id.*, PageID.42.) Plaintiff's amended complaint can also be construed to assert Fourteenth Amendment due process claims premised upon the loss of his property. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.40.)

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

6

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1. Claims for Declaratory Relief

As noted above, Plaintiff requests declaratory relief, as well as compensatory and punitive damages. (Am. Compl., ECF No. 7, PageID.40.) Plaintiff, however, is no longer confined at IBC, where all Defendants are employed. Instead, Plaintiff is now incarcerated MBP. The United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief against a defendant in both his or her

7

official and personal capacities. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). For that reason alone, Plaintiff's claims for declaratory relief will be dismissed.

### 2. Claims for Damages

#### a. First Amendment Retaliation Claims

Plaintiff suggests that Defendants violated his First Amendment rights by retaliating against him. Specifically, Plaintiff avers that Defendants refused to protect him from inmate Schoening because of Plaintiff's grievances. (Am. Compl., ECF No. 7, PageID.42.) Plaintiff also suggests that his mail, grievances, and kites were ignored in retaliation for his prior grievances. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.

8

1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff merely alleges the ultimate fact of retaliation with respect to all Defendants. He has not presented any facts whatsoever to support his suggestion that Defendants failed to protect him from inmate Schoening because of his grievances and complaints. Indeed, Plaintiff fails to allege any facts suggesting that any of these individuals were even aware of his various grievances. Moreover, although Plaintiff contends that staff retaliated against him for filing grievances by not processing his mail, kites, and other grievances, Plaintiff has not alleged any facts suggesting that the named Defendants were involved in this activity. Accordingly, Plaintiff fails to state First Amendment retaliation claims against Defendants, and such claims will be dismissed. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

b. **Eighth Amendment Failure to Protect Claims**

Plaintiff contends that Defendants failed to protect him from the assault by inmate Schoening on December 5, 2022.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate

9

indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

To show liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 32; *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

With respect to Defendants Federea and Battle, Plaintiff claims that on several occasions, he informed these individuals about the abuse and issues he was experiencing with inmate Schoening as his cellmate. Plaintiff requested that he be moved to no avail. Plaintiff also told Defendants Federea and Battle that inmate Schoening was threatening to physically harm Plaintiff. Taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's failure to protect claims for damages against Defendants Federea and Battle on initial review.

Plaintiff does not mention Defendants Ritter and Normington by name in his amended complaint. Instead, Plaintiff states that he "told each P.C./ARUS all of what was going on almost every day." (Am. Compl., ECF No. 7, PageID.28.) Plaintiff also indicates that the "grievances [he] wrote made staff in [the] unit aware of [the] situation[,] along with R.U.M. Resident Unit Manager and ARUS, Assistant Resident Unit Manager." (*Id.*) However, "[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that . . . claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Moreover, to the extent Plaintiff faults Defendant Normington for failing to act upon his written grievance, that is insufficient to impose § 1983 liability. *See Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff's claims against Defendants Ritter and Normington fall short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and, therefore, are subject to dismissal for the reasons set forth above. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short a plain statement of the claim showing that the pleader is entitled to relief").

      c.   **Fourteenth Amendment Due Process Claims**

The Court has construed Plaintiff's amended complaint to assert Fourteenth Amendment due process claims premised upon the loss of his property. As an initial matter, Plaintiff's amended complaint is devoid of facts from which the Court could infer that any of the named Defendants were personally involved in the loss of any of Plaintiff's property. Nevertheless, any intended due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property

by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021); MDOC Policy Directive 04.02.110, ¶ E (eff. Nov. 1, 2017). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. MICH. COMP. LAWS. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his property. Accordingly, Plaintiff's Fourteenth Amendment due process claims will be dismissed.

### B.     State-Law Negligence Claims

Plaintiff appears to assert that Defendants violated state law because they were negligent in failing to protect him from harm. (Am. Compl., ECF No. 7, PageID.42.) Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state-law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, because the Court has dismissed Plaintiff's federal claims against Defendants Ritter and Normington, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state-law claims against those individuals and will dismiss those claims without prejudice. However, because Plaintiff's Eighth Amendment failure to protect claims against Defendants Federea and Battle remain pending, the Court will exercise supplemental jurisdiction over Plaintiff's state-law claims against those individuals.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims Defendants Ritter and Normington will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss

Plaintiff's state-law claims against Defendants Ritter and Normington without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss the following claims against Defendants Federea and Battle for failure to state a claim: (1) Plaintiff's claims for declaratory relief; (2) Plaintiff's First Amendment retaliation claims; and (3) any intended Fourteenth Amendment due process claims premised upon Plaintiff's loss of property. The following claims against Defendants Federea and Battle remain in the case: (1) Plaintiff's Eighth Amendment failure to protect claims for damages; and (2) Plaintiff's state-law negligence claims.

An order consistent with this opinion will be entered.

Dated:     July 22, 2024               /s/ Jane M. Beckering
                                                           Jane M. Beckering
                                                           United States District Judge